**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANTHONY MUNIZ,

      Petitioner,

v.                                                          Case No. 8:23-cv-2445-WFJ-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Anthony Muniz, a Florida prisoner, timely filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 6). Although afforded the opportunity, (Doc. 4), Mr. Muniz did not file a reply. After careful review, the petition is **DENIED**.

## I.  Background

This case arises from a robbery that took place at a Chevron gas station in Tampa, Florida. On Christmas Day 2015, the victim—Thomas Epley, Jr.—entered the station's convenience store and asked the clerk if he could charge his cellphone. (Doc. 6-2, Ex. 3, at 114). The clerk agreed, and Mr. Epley "went outside for a few minutes while [his phone] charged." (*Id.*) Outside the store, Mr. Epley saw a man—later identified as Mr. Muniz— "sitting" and "pacing." (*Id.* at 115). Mr. Epley "got nervous" and went back inside the store to retrieve his phone. (*Id.*) He then left the store, walked through the parking lot, and turned onto a "side road." (*Id.* at 115-16). There, Mr. Muniz approached Mr. Epley, said "Give

1

me your phone," and snatched the phone out of Mr. Epley's hand. (*Id.* at 117-18). Next,

Mr. Muniz began to punch Mr. Epley, saying, "Give me your wallet." (*Id.* at 118). A

struggle ensued. Mr. Epley "holler[ed] for help" and "tried to run," but Mr. Muniz "kept

coming in front of [him] and stopping [him] and hitting [him]." (*Id.* at 118-19). Mr. Epley

fell to the ground several times; Mr. Muniz kicked and punched him while he was down.

(*Id.* at 119). Mr. Muniz eventually obtained the wallet and left the scene. (*Id.* at 124). Mr.

Epley walked into the store and "passed out." (*Id.*)

Sometime later, law enforcement located Mr. Muniz a few blocks from the gas

station. (*Id.* at 153). A search of his person revealed a crack pipe, Mr. Epley's cellphone,

and a debit card belonging to Mr. Epley's son. (*Id.* 161-62). Mr. Muniz was arrested and

charged with robbery and possession of drug paraphernalia.[1] (*Id.*, Ex. 2).

The case went to trial. Mr. Muniz testified in his defense and offered a different

version of events. He claimed that he and Mr. Epley shared a beer outside the gas station

while they waited for the bus. (*Id.*, Ex. 3, at 177-79). Mr. Muniz allegedly asked Mr. Epley

if he could borrow his cellphone so that he (Mr. Muniz) could call his sister. (*Id.* at 180).

Mr. Epley agreed, and Mr. Muniz dialed his sister. (*Id.* at 181). According to Mr. Muniz,

his sister did not pick up the phone after "three or four calls." (*Id.*) Mr. Epley allegedly

"grew impatient" and asked for his phone back. (*Id.*) Mr. Muniz refused, whereupon Mr.

Epley "tried to snatch the phone away" and "took a swing at" Mr. Muniz. (*Id.* at 181, 183).

During the ensuing struggle, Mr. Muniz picked up a dollar bill that fell out of Mr. Epley's

---

[1] Mr. Muniz was also charged with felony battery, but that count was *nolle prossed* before jury selection began. (Doc. 6-2, Ex. 3, at 7).

wallet and "accidentally" picked up the debit card. (*Id.* at 186-87, 198). Mr. Muniz claimed

he decided to keep the phone because he was "mad at [Mr. Epley]" for "ripp[ing] [his]

shirt" during the scuffle. (*Id.* at 186). On direct examination, Mr. Muniz admitted that he

had fifteen prior felony convictions. (*Id.* at 187).

The jury found Mr. Muniz guilty as charged. (*Id.*, Ex. 4). Because he qualified as a

prison releasee reoffender, Mr. Muniz received a mandatory sentence of fifteen years in

prison. (*Id.*, Ex. 5, at 4). Following an unsuccessful direct appeal, Mr. Muniz moved for

postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 9, 11).

Some of his claims were summarily denied; the rest were denied after an evidentiary

hearing. (*Id.*, Exs. 12, 14, 16, 17, 18). The appellate court affirmed without opinion. (*Id.*,

Ex. 23). This federal habeas petition followed. (Doc. 1).

## II.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this

proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief

can be granted only if a petitioner is in custody "in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal

habeas relief cannot be granted on a claim adjudicated on the merits in state court unless

the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent

affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.      Ineffective Assistance of Counsel

Mr. Muniz alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Muniz must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Muniz must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly

deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III.   Discussion

### A.   Ground One—Failure to Properly Advise about Plea Offer

Mr. Muniz contends that trial counsel failed to properly advise him about the prosecution's plea offer of seven years in prison followed by four years of probation. (Doc. 1 at 8-9). As noted above, because he qualified as a prison releasee reoffender ("PRR"), Mr. Muniz faced a mandatory minimum sentence of fifteen years in prison. Fla. Stat. § 775.082(9)(a). Three months before trial, the prosecution made the seven-year offer. (Doc. 6-2, Ex. 17, at 37). That offer included a waiver of the PRR enhancement. (*Id.* at 38). Unlike other Florida prisoners, a defendant sentenced as a PRR cannot receive gain-time while incarcerated. *See Smith v. State*, 219 So. 3d 978, 979 (Fla. 1st DCA 2017) (noting that a PRR sentence "barred [defendant's] eligibility to earn gain-time"). Thus, had Mr. Muniz accepted the prosecution's non-PRR offer, he would have been "eligible for gain-

6

time" on a seven-year sentence. (Doc. 6-2, Ex. 17, at 38). Mr. Muniz ultimately rejected the deal, went to trial, and was sentenced to fifteen years in prison as a PRR. (*Id.*, Ex. 3, at 4-6). Under Florida law, he "must serve 100 percent of [that] sentence." Fla. Stat. § 775.082(9)(b).

Mr. Muniz does not allege that counsel neglected to relay the seven-year offer. Nor does he contend that counsel failed to inform him that the offer included a waiver of the PRR enhancement. Instead, he faults counsel for allegedly failing to tell him that, if he accepted the offer, he "would be eligible for gain-time." (Doc. 1 at 9). According to Mr. Muniz, he mistakenly believed that the PRR waiver meant "the State was waiving the fifteen-year day-for-day sentence and replacing it with a seven-year day-for-day [ ] sentence." (*Id.*) In other words, Mr. Muniz was unaware that, if he accepted the offer, "the seven years would not be day-for-day, and [ ] he would be eligible for gain-time and only serve six years with good behavior." (*Id.* at 10). Had counsel explained this consequence of the PRR waiver, Mr. Muniz allegedly would have accepted the offer. (*Id.*)

The postconviction court held an evidentiary hearing on this claim. Mr. Muniz testified that counsel never told him he would "be entitled to gain-time with th[e] seven-year prison sentence." (Doc. 6-2, Ex. 17, at 11). By contrast, counsel stated that on at least two occasions, he told Mr. Muniz that he would be eligible for gain-time if he accepted the offer. (*Id.* at 49-50). Specifically, on March 29, 2016, the two "discuss[ed]" that Mr. Muniz would receive gain-time if he accepted the deal, and "there wasn't any indication . . . that he did not understand that." (*Id.* at 49). Indeed, counsel's notes for that meeting "specifically reference[d] advising [Mr. Muniz] that he would be eligible for gain-time."

7

(*Id.* at 50). Later, on May 1, 2016, counsel again advised Mr. Muniz that the seven-year offer would make him "eligible for gain-time"—unlike "the PRR, which would be the mandatory fifteen, day-for-day." (*Id.*)

After the evidentiary hearing, the postconviction court rejected Mr. Muniz's claim in a written order. (*Id.*, Ex. 18, at 4). The court found counsel's "testimony at the evidentiary hearing to be more credible than [Mr. Muniz's] testimony based on their demeanors in the courtroom." (*Id.*) The court credited counsel's "testimony that he explained the consequences of a PRR enhancement, that he and [Mr. Muniz] discussed the State's offer—including the waiver of the PRR enhancement—on numerous occasions, and that [Mr. Muniz] appeared to understand the offer and did not have questions about it." (*Id.* at 4-5). Moreover, the court specifically found that counsel "advise[d] [Mr. Muniz] that the [seven-year] offer did *not* include the mandatory day-for-day sentence enhancement." (*Id.* at 4 (emphasis added)). Based on these factual findings, the court concluded that Mr. Muniz "ha[d] not established deficient performance for failing to adequately explain the plea offer." (*Id.* at 5).

The rejection of this claim was reasonable. "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland.*" *Missouri v. Frye*, 566 U.S. 134, 140 (2012). *Strickland* requires courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have

chosen it." *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).

Moreover, because the postconviction court rejected Mr. Muniz's claim on the merits, he

cannot prevail unless he shows that "no reasonable jurist could find that his counsel's

performance fell within the wide range of reasonable professional conduct." *Franks v.

GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020).

Mr. Muniz cannot overcome the "doubly deferential" standard of review required

by *Strickland* and AEDPA. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). His claim

turned on a credibility determination. At the evidentiary hearing, Mr. Muniz testified that

counsel never told him he would "be entitled to gain-time with th[e] seven-year" plea deal.

(Doc. 6-2, Ex. 17, at 11). But the postconviction court declined to credit this testimony.

(*Id.*, Ex. 18, at 4). It expressly found counsel to be "more credible" than Mr. Muniz "based

on their demeanors in the courtroom." (*Id.*) And, as noted above, counsel testified that on

at least two occasions, he told Mr. Muniz that he would be eligible for gain-time if he

accepted the seven-year offer. (*Id.*, Ex. 17, at 49-50). "Determining the credibility of

witnesses is the province and function of the state courts, not a federal court engaging in

habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011).

Mr. Muniz has not shown by "clear and convincing evidence" that the court's credibility

determination was erroneous. 28 U.S.C. § 2254(e)(1). Thus, he cannot overcome the

"presumption of correctness" afforded to that determination. *Consalvo*, 664 F.3d at 845.

Based on the postconviction court's reasonable determination of the facts—that

counsel did advise Mr. Muniz about his eligibility for gain-time under the seven-year

offer—counsel's performance was not deficient. Therefore, the postconviction court

9

reasonably rejected Mr. Muniz's claim of ineffective assistance. *See Franks*, 975 F.3d at 1176 (to prevail on *Strickland* claim under AEDPA, petitioner must show that "no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct").

**B.     Ground Two—Failure to Admit Victim's Toxicology Report**

Mr. Muniz contends that trial counsel provided ineffective assistance by failing to "present[ ] the victim's toxicology report at trial." (Doc. 1 at 13). According to Mr. Muniz, the discovery in his case included "medical reports from the hospital that treated [the victim] after the incident." (*Id.*) Those records allegedly "included a toxicology report reflecting that the [victim] was highly intoxicated at the time of the offense." (*Id.*) In Mr. Muniz's view, the toxicology report would have "bolstere[d] [his] version of events that night with the jury," leading to a reasonable probability of a different outcome at trial. (*Id.*)

The postconviction court heard testimony on this claim at the evidentiary hearing. Mr. Muniz testified that he "believe[d]" the victim's medical records included a toxicology report. (Doc. 6-2, Ex. 17, at 14). But he did not produce the report at the hearing, nor has he presented any toxicology evidence at any stage of his state or federal proceedings. Counsel, for his part, testified that he "reviewed" the victim's hospital records, which were "57 pages in length." (*Id.* at 41). Counsel stated that "[t]here were no toxicology reports," nor was there any "indication of any type of blood work[ ] done which would have provided a toxicology result." (*Id.*) To the contrary, "the medical records . . . indicated that [the victim] was oriented and alert." (*Id.* at 59).

The postconviction court rejected this claim for lack of "deficient performance or prejudice." (*Id.*, Ex. 18, at 6). The court found that "based on [counsel's] testimony"—"which the [c]ourt [found] credible [in light of] his demeanor in the courtroom"—"the victim's medical records did not include a toxicology report and they did not indicate any blood work tests that could have provided [a] toxicology result." (*Id.*) Moreover, Mr. Muniz "testified at the evidentiary hearing only that he 'believed' the records contained a toxicology report." (*Id.*) Thus, Mr. Muniz "ha[d] not demonstrated toxicology results actually existed." (*Id.*) The court declined to "find [that] counsel acted deficiently for failing to use documents that [Mr. Muniz] ha[d] not demonstrated actually existed." (*Id.*) And "even if such a document existed, [Mr. Muniz] ha[d] not established what information the document would have reflected." (*Id.*) Therefore, he could not establish either deficient performance or prejudice. (*Id.*)

The postconviction court acted reasonably in rejecting this claim. Mr. Muniz's assertion of ineffective assistance hinges on a factual premise—that the hospital records "included a toxicology report reflecting that [the victim] was highly intoxicated at the time of the offense." (Doc. 1 at 13). But there is no evidence that such a report existed. Counsel testified that the hospital records did not contain a toxicology report, and Mr. Muniz has never presented any toxicology results. (Doc. 6-2, Ex. 17, at 41). Thus, Ground Two rests entirely on Mr. Muniz's speculation that a toxicology report existed. But "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation." *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985). Because there is no evidence that a toxicology report was ever created,

the postconviction court correctly found no deficient performance or prejudice. *See Durham v. Sec'y, Fla. Dep't of Corr. & Fla. Att'y Gen.*, No. 5:20-cv-240-JLB-PRL, 2023 WL 5445589, at *13 (M.D. Fla. Aug. 24, 2023) (rejecting *Strickland* claim because petitioner "[did] not now offer this 'missing' evidence to show that it would exonerate him, nor did he do so at the evidentiary hearing on his Rule 3.850 [m]otion").

### C.      Ground Three—Failure to Call Mr. Muniz's Sister at Trial

Mr. Muniz contends that trial counsel was ineffective for failing to call his sister, Carmin Muniz, as a witness at trial. (Doc. 1 at 16). Ms. Muniz allegedly would have testified that she "receive[d] several phone calls from [the victim's] cellphone on the night of th[e] incident," but that she refused to answer because "she [did] not answer calls from unknown phone numbers." (*Id.*) According to Mr. Muniz, this testimony would have "impeached [the victim's statement] that he never voluntarily gave the phone to [Mr. Muniz]," thus making "an acquittal . . . reasonably likely." (*Id.* at 16-18).

The postconviction court took testimony on this claim at the evidentiary hearing. Mr. Muniz said that he asked counsel to "reach out" to Ms. Muniz because he had used the victim's phone to call her "prior to the incident." (Doc. 6-2, Ex. 17, at 18-19). For her part, Ms. Muniz testified that counsel called her "only once" and left a voicemail, that she "returned the phone call . . . around two or three times" with no "response," and that she stopped trying to reach him because "I'm not going to keep calling him if he's not calling me back." (*Id.* at 27). By contrast, counsel testified that, with Mr. Muniz's permission, he "attempt[ed] several times to reach" Ms. Muniz. (*Id.* at 43). Counsel stated that he called and left voicemails on February 1 and February 8, 2016. (*Id.*) Ms. Muniz returned the calls

on February 18, but counsel was unavailable, so he called her back later and "left another voicemail." (*Id.*) Counsel did "not hear from [Ms. Muniz] again." (*Id.*) Later, on March 29, counsel met with Mr. Muniz and "advised" him that he had been unable to reach Ms. Muniz. (*Id.*) Mr. Muniz said "that was okay" because "he didn't want to involve his family further in his issues." (*Id.*) At that point, counsel "made no further attempt to contact" Ms. Muniz. (*Id.* at 56). Furthermore, after the verdict but before sentencing, counsel asked Mr. Muniz whether he wished to call Ms. Muniz as a "character witness[ ]" at the sentencing hearing. (*Id.* at 61). Mr. Muniz repeated that "he did not want to involve his family further." (*Id.*)

The postconviction court rejected this claim, finding that Mr. Muniz failed to "establish[ ] deficient performance." (*Id.*, Ex. 18, at 8). Again, the court found counsel's "testimony" to be "credible based on his demeanor in the courtroom." (*Id.*) As the court noted, counsel stated that he "unsuccessfully attempted to contact Ms. Muniz," and that "after the unsuccessful attempts, [Mr. Muniz] told [counsel] he no longer wished to involve his family." (*Id.*) Thus, the court found that Mr. Muniz "ha[d] not demonstrated [counsel] acted deficiently for failing to call Ms. Muniz as a witness where [Mr. Muniz] told counsel he no longer wanted to involve Ms. Muniz in his case." (*Id.*)

The postconviction court correctly rejected this claim. "[T]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Johnston v. Singletary*, 162 F.3d 630, 642 (11th Cir. 1998). Applying this principle, courts have held that an attorney is not "require[d] to disregard a mentally competent client's sincere and specific instructions about an area of defense."

13

*Rutherford v. Crosby*, 385 F.3d 1300, 1313 (11th Cir. 2004) (collecting cases); *see also*

*Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) ("Counsel will not be deemed

ineffective for following their client's wishes, so long as the client made an informed

decision."). Here, counsel testified that, after several failed attempts to reach Ms. Muniz,

Mr. Muniz said "he didn't want to involve his family further in his issues." (Doc. 6-2, Ex.

17, at 43). By his own admission, Mr. Muniz was aware before trial that Ms. Muniz could

provide potentially relevant testimony. (*Id.* at 17-18). Yet he expressly instructed counsel

to refrain from further contact with his family. (*Id.* at 43). Mr. Muniz "cannot now complain

that his trial counsel was ineffective for simply following his . . . instructions." *Cole v.

Crosby*, No. 5:05-cv-222-WTH-GRJ, 2006 WL 1169536, at *41 (M.D. Fla. May 3, 2006).

Accordingly, the postconviction court reasonably concluded that counsel was not deficient

for failing to call Ms. Muniz at trial.

### D.    Ground Four—Cumulative Error

Finally, Mr. Muniz contends that the "cumulative effect" of trial counsel's alleged

errors "denied [him] [a] fair and impartial trial." (Doc. 1 at 20). "Under the cumulative

error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can

warrant reversal if their aggregate effect is to deprive the defendant of a fair trial."

*Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A

cumulative error claim "must fail," however, where none of the "individual claims of error"

has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

Because each individual claim of error lacks merit, Mr. Muniz's cumulative error claim

necessarily fails.

## IV.   Conclusion

Accordingly, the Court **ORDERS**:

1.  Mr. Muniz's petition (Doc. 1) is **DENIED**.

2.  The **CLERK** is directed to enter judgment against Mr. Muniz and to **CLOSE** this case.

3.  Mr. Muniz is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Muniz must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Muniz has not made the requisite showing. Because Mr. Muniz is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on August 23, 2024.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**